IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LISA LORRAINE MANTHE,

                Plaintiff,

     v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                Defendant.

OPINION AND ORDER

17-cv-535-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       Plaintiff Lisa Lorraine Manthe seeks review of a final adverse decision by defendant Nancy A. Berryhill, Acting Commissioner of Social Security, denying plaintiff's claim for disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). Plaintiff contends that she has been disabled since September 29, 2009, but three different administrative judges have disagreed, determining that she is capable of engaging in substantial gainful activity. In earlier proceedings, plaintiff contended that she was prevented from working by various medical problems, including multiple sclerosis, lumbar degenerative disc disease, obesity and depression, but in this proceeding, she is relying only on her depression as preventing her from working.

       From my review of the record and the parties' arguments, I am persuaded that the last administrative law judge to consider this case reached the correct decision when he found that any depression plaintiff suffers is only episodic and short-term and would not cause more than minimal limitation of her ability to perform basic mental work activities. Accordingly, plaintiff's

1

motion for disability insurance benefits will be denied.

The following facts are drawn from the administrative record (AR).

RECORD FACTS

A. Background

Plaintiff Lisa Lorraine Manthe was born on October 9, 1977. In her present application for benefits she alleges that she became disabled as of September 28, 2009. AR 85. (This was not her first application; she filed earlier ones that were denied. See, e.g., AR 2A, AR 4A.) Over the course of these proceedings, she has alleged that she suffered from several impairments that she says prevent her from working at a substantial gainful activity, including multiple sclerosis, degenerative disc disease, obesity and depression.

B. 2010 Disability Application

Plaintiff filed an application for disability insurance benefits in January 2010, asserting an onset date of September 28, 2009. After her application was denied, she asked for and was granted review by the Appeals Council. At a hearing on December 2, 2011, Administrative Law Judge Gregory Hamel found that plaintiff was not disabled, although she did have the severe impairments of multiple sclerosis, narcolepsy, degenerative disc disease in her lumbar area, dysthymic disorder and obesity. He acknowledged that plaintiff had alleged concentration problems "due to sadness," but he found no mental status examination findings showing any significant concentration deficit, AR 140, and he noted that plaintiff had been taking Wellbutrin for her dysthymic disorder and had found it "very helpful," AR 141. In addition, her GAF

(Global Assessment of Functioning) was 65 out of 100. (According to the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* at 32, (4th ed., text rev. 2000), a GAF score of 61-70 is an indication of a person who has some mild symptoms, such as depressed mood and mild insomnia or some difficulty in social, occupation or school functioning but is generally functioning fairly well.)

Administrative Law Judge Hamel rated plaintiff as having moderate difficulties in concentration, persistence and pace. AR 141. He concluded that plaintiff retained the residual functional capacity to perform light work that did not involve climbing ropes, ladders or scaffolds, avoided hazardous environments, and consisted of performing "only routine and repetitive tasks that do not require more than occasional public contact." AR 142.

### C. 2013 Hearing

After the denial of her first application, plaintiff sought review from the Appeals Council, which remanded the matter to a second administrative law judge, William Spalo. This judge found that plaintiff had the severe impairments of multiple sclerosis, lumbar degenerative disc disease, obesity and depression, but concluded that whether these impairments were considered independently or in combination, they did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. He found as well that plaintiff retained the residual functional capacity to perform a reduced range of light work and, according to the vocational expert's testimony, could perform a number of jobs in the national economy.

Plaintiff did not file exceptions to these conclusions and the Appeals Council did not assume jurisdiction on its own, which left Administrative Law Judge Spalo's decision as the final

decision of the Social Security Administration. Plaintiff then filed a civil action pursuant to 42 U.S.C. § 404(g), seeking review of the agency decision.

After hearing the case, this court determined that another remand was necessary because Administrative Law Judge Spalo had asked the vocational expert a flawed hypothetical question concerning the kind of substantial gainful work plaintiff might be able to perform. Specifically, he failed to include in those questions all of the limitations identified in 2008 by the state disability examiner, Dr. Jack Spear. Dr. Spear had reviewed plaintiff's medical record on June 2008 and found that she had moderate limitations in understanding, memory and concentration, persistence and pace. Although Administrative Law Judge Spalo had accounted for most of the limitations listed by Dr. Spear, he did not "alert the vocational expert to plaintiff's psychologically based symptoms of depression and the possibility that she might have trouble performing at a consistent pace without more than the usual number of rest periods." Manthe v. Colvin, 15-354, dkt. #12, at 7. I found that, in failing to take this step, the administrative law judge did not comply with the law in this circuit, which required more specificity in posing hypothetical questions to vocational experts than simply "confining the claimant to simple, routine tasks and limited interactions with others." Id. at 8.

D. 2017 Hearing

A third hearing in this case was held on May 3, 2017, before Administrative Law Judge Thomas Springer. At this hearing, plaintiff testified that she was divorced and living with her brother and her 15-year-old daughter in a two-story house in rural Wisconsin. She reported having struggled in school, particularly with reading, but she said she had had no problem with

4

basic math concepts, such as adding and subtracting, and that she had graduated from high school. She testified that at the time of her hearing, she was 5'5" and weighed 249 pounds, after losing almost 60 pounds in the preceding four years. AR 1154-57.

Plaintiff testified that she had a weekly cleaning job, that it was the only job she had and that her daughter did most of the actual work, under her mother's supervision. Her brother did some of the family cooking and her daughter helped with laundry. Her past work included jobs in a grocery store bakery, in a mail room, bundling and sorting advertising flyers, and in a production line for WeatherShield, a window manufacturer. At the first two jobs, she had lifted 20 pounds or less; at Weathershield she sometimes lifted 50-60 pounds.

When questioned by her counsel, plaintiff testified that she had problems working because of her multiple sclerosis. Her counsel did not ask her any questions about her depression, degenerative disc disease, obesity or any other problem that might affect her functional capacity and she did not mention any. The administrative law judge noted later in his written opinion that plaintiff's counsel had acknowledged in a pretrial submission that plaintiff did not satisfy the requirements of any listed impairment, including multiple sclerosis or disc disease. AR 1129-33.) He found "the postural limitations included within [plaintiff's] residual functional capacity [to be] consistent with her obesity." AR 1133.

Vocational expert William Dingess testified at the hearing that the bakery and mail sorting work plaintiff had done before September 2009 would be classified as light and unskilled, with a reasoning developmental level of 2, and further classified as simple, routine work. AR 1179. He testified that such work would allow for a worker's being off-task for no more than 10 percent of the time, including regular breaks, and would not involve fast-paced

or production rate tasks. He added that performing such a job would require plaintiff to have a sit-stand option. AR 1180.

Dingess testified that a person with the specified requirements could perform jobs such as assembler, inspector or hand packager at the light or sedentary levels and that several hundred of these jobs existed at the state level. AR 1180-84. With a sit-stand option such as plaintiff would need, the number of potential positions would be reduced but not eliminated. AR 1184-85. However, an individual who could finger and handle bilaterally only frequently, as opposed to constantly, could not perform any of the three unskilled sedentary jobs. AR 1185-86.

Dingess added that the jobs he had identified could be performed without standing if the individual found it easier to remain seated, although such a restriction would reduce the number of jobs still further. AR 1183. An individual unable to engage in sustained work on a continuing basis for eight hours a day, five days a week, would be unable to engage in competitive work at any exertional level. AR 1185. In addition, an individual who lacked the ability to engage in frequent fingering could not perform any of the jobs he had identified. AR 1185-86. (He also said that his opinion would be the same if the individual needed a walker either to ambulate or to stand at the workstation, AR 1186, but there is no credible evidence that plaintiff requires a walker.)

On May 11, 2017, the administrative law judge issued his opinion, concluding that plaintiff had the severe impairments of multiple sclerosis, degenerative disc disease and obesity, AR 1121, but no severe impairment of depression. AR 1124. He explained why he had rejected Dr. Spear's 2008 opinion that plaintiff had depression, noting that the determination was not supported by any reasoning, AR 1125, and adding that Spear's assessment was "essentially

6

consistent with [plaintiff's] being able to perform at least the basic mental demands of unskilled work." AR 1125. He observed that the level of limitation noted by Spear was "not borne out in the voluminous record, which demonstrates [plaintiff's] episodic, and largely situational, short-term psychological symptom exacerbation." Id. He also noted that plaintiff had experienced symptoms of a depressive disorder, but that she had not suffered more than mild functional limitations. Id. She had obtained relief from depression with Wellbutrin in 2006 and again with Sertraline in 2016, when she had stressful periods in her life, id., and her mental health was rated as stable. Exh. #20F, at 5. Id. The administrative law judge concluded that whether plaintiff's "medically determinable mental impairment of depression was considered singly or in combination, it did not cause more than minimal limitation in [her] ability to perform basic mental work activities and is therefore, non-severe." AR 1125.

OPINION

Although plaintiff has alleged throughout these extended proceedings that she suffers from a number of disabling impairments that prevent her from working, including multiple sclerosis, degenerative disc disorder, obesity and depression, she now focuses only on depression as the reason she is unable to work and takes issue with the finding by Administrative Law Judge Springer that her depression was not severe. Before reaching the merits of that contention, however, it is necessary to consider whether plaintiff is correct in arguing that this court is bound by the findings of Administrative Law Judges Hamel and Spalo that she suffered from depression and is not free to reconsider that finding.

According to plaintiff, the "law of the case" doctrine prohibits Administrative Law Judge

7

Springer from reconsidering this court's ruling on remand of the case to the agency for a third hearing. At the time, the court had concluded that remand was necessary because Administrative Law Judge Spalo had not alerted the vocational expert to "plaintiff's psychologically based symptoms of depression and the possibility that she might have trouble performing at a consistent pace without more than the usual number of rest periods." Manthe v. Colvin, 15-cv-354, dkt. #12 at 7. In support of her position, plaintiff cites cases holding that the doctrine "requires the administrative agency, on remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision unless there is a compelling reason to depart." Wilder v. Apfel, 153 F.3d 799, 803 (7th Cir. 1998). See also Law v. Medco Research, Inc., 113 F.3d 781, 783 (7th Cir. 1997); Chicago v.N.W. Transp. Co. v. United States, 574 F2d 926, 929-930) (7th Cir. 1978) (reasons why law of case might not apply in particular case include substantial new evidence introduced after first review or "a conviction on the part of the second reviewing court that the decision of the first was clearly erroneous")). In this case, however, Administrative Law Judge Springer had compelling reasons to depart from the prior decision, as he explained at length.

First, Dr. Spear's 2008 psychological assessment of plaintiff dated from a prior closed disability application filed before the onset of her alleged disability and consisted only of his rating of plaintiff's supposed disabilities, with no supporting information.

Second and more important, the doctor's assessment was at odds with the facts in the 2017 record, which revealed that plaintiff had not suffered from debilitating episodes of depression during the relevant period starting in September 2009, but had had only brief bouts of depression that were easily handled with medication. AR 1124-25, 1125-28. As

Administrative Law Judge Springer explained, the new medical evidence provided ample reason for his decision not to adopt the "law of the case" because it revealed that plaintiff had demonstrated only "episodic, and largely situational, short-term psychological symptom exacerbation." AR 1124-25.

In addition, Administrative Law Judge Springer noted that there was reason to question the earlier decisions that had been made. Administrative Law Judge Hamel had based his assessment of plaintiff's depression on her own subjective reports, giving "plaintiff the benefit of the doubt," AR 140-41, and Administrative Law Judge Spalo had done the same, adopting his predecessor's "moderate" assessment of limitation as it related to the depression. However, although Administrative Law Judge Hamel had found plaintiff's dysthymia (a chronic mood disorder consisting of the same cognitive and physical problems as in depression but with less severe but longer lasting symptoms," Public Medical Health, U.S. National Library of Medicine), to be a severe impairment, he had also acknowledged that plaintiff had demonstrated quite mild symptoms and consequent limitations and had added that he was basing his conclusion of moderate deficiency on plaintiff's own subjective report. He noted also that plaintiff herself had reported that Wellbutrin had relieved her feelings of depression so that she no longer felt depressed, AR 141, and that in May 2011, her mood and affect were appropriate and her eye contact and insight were excellent. Exh. 20F, at 5.

For his part, Administrative Law Judge Spalo adopted the "moderate" limitation for plaintiff's concentration, persistence and pace that Administrative Law Judge Hamel had assessed in his opinion. AR 1231. Administrative Law Judge Spalo noted, however, that plaintiff did not seem to exhibit any concentration problems and that she had not seemed to have any

9

trouble understanding or responding to questions from Administrative Law Judge Hamel in the previous hearing. AR 1232. In reaching his conclusion about plaintiff's concentration, persistence and pace, Administrative Law Judge Spalo acknowledged that he had accorded "great weight" to the 2008 opinion of Dr. Spear, id.,while noting that plaintiff did not appear to have any trouble at the hearing before him. She had testified readily to details such as her social security number, age and date of birth and she reported driving for distances with no apparent trouble concentrating on the task, paying bills, watching dramas on television and playing video games with her daughter. AR 1233.

Administrative Law Judge Springer concluded that the cumulative medical evidence he reviewed in 2017 showed that plaintiff's expressed symptoms of depressive disorder did not "consistently cause more than mild functional limitations," AR 1125, a conclusion that was well supported by the record. He found it noteworthy, but not determinative, that plaintiff had made no mention at the 2017 hearing of any significant symptoms of depression or of any other psychiatric impairment.

Plaintiff makes the additional argument that the "mandate rule" prohibits this court from reconsidering its earlier conclusion, but this is just another name for the rule set out in Wilder, 153 F.3d at 803, that a lower court is constrained to follow the specific directive of a higher court, absent a compelling reason not to do so. Like the "law of the case" rule, however, the mandate rule does not require a court to ignore the strong evidence in this case rebutting plaintiff's claims of suffering from debilitating episodes of depression. At most, the evidence showed that she has had brief bouts of depression that were short-lived and easily treated. AR 1125.

Finally, plaintiff argues that the administrative law judge failed to comply with the court's

order by "playing doctor," specifically, by ignoring the medical evidence of depression, but this is only another way of arguing that this court is bound by an earlier factual determination that has since been refuted. In fact, he did not ignore the "evidence of depression"; that evidence did not exist.

In sum, although this court had directed any new administrative law judge "to alert the vocational expert to plaintiff's psychologically based symptoms of depression and the possibility that [plaintiff] might have trouble performing at a consistent pace without more than the usual number of rest periods," there was no reason to do this once the administrative law judge had excluded the 2008 psychological report from his consideration and plaintiff herself had not even mentioned depression at her hearing before him. Although the administrative law judge did not follow the court's directive, his failure to do so does not warrant a fourth hearing of the matter.

ORDER

IT IS ORDERED that plaintiff Lisa Lorraine Manthe's motion for summary judgment, dkt. #17, is DENIED in all respects. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 9th day of August, 2018.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge